IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JONATHAN L. LEONARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV717 |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Jonathan L. Leonard, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain review of a final decision of the Commissioner of Social Security[1] denying his claims for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Act. The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a POD and DIB in January of 2012 alleging a disability onset date of January 22, 2010. (Tr. 11, 175-78, 191.)[2] The application was denied initially

---

[1] Nancy Berryhill recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 5.)

and again upon reconsideration. (*Id.* at 115-118, 120-23.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") (*id.* at 124-25) and at the March 20, 2014 hearing were Plaintiff, his attorney, and a vocational expert ("VE"). (*Id.* at 25-67.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 11-20.) On July 26, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of review. (*Id.* at 1-5.)

## II. FACTUAL BACKGROUND

Plaintiff was 44 years old on the alleged disability onset date. (*Id.* at 18.) He had at least a high school education and was able to communicate in English. (*Id.*)

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

2

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson*, 402 U.S. at 401. The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3).

3

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(a). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(2)(A).

### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

---

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

4

(5) Whether the claimant is able to perform any other work considering both his residual functional capacity[5] ("RFC") and his vocational abilities. If so, the claimant is not disabled.

20 C.F.R. § 404.1520.

Here, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 22, 2010. (Tr. 13.) The ALJ next found in step two that Plaintiff had the following severe impairments: degenerative disc disease, a hand injury, hypertension, carpel tunnel syndrome, DPN, and obesity. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 14.) At step four, the ALJ determined that Plaintiff could not return to his past relevant work. (*Id.* at 18.) At step five, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs in the national economy that he could perform. (*Id.* at 19.)

### B. Residual Functional Capacity Determination

Prior to step four, the ALJ determined Plaintiff's RFC based on his evaluation of the evidence. (*Id.* at 14-18.) Based on the evidence as a whole, the ALJ determined that:

> [t]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1576(b) except he requires the option to sit and stand at will, and he cannot twist or turn about

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

5

the back continuously. The claimant can frequently, not constantly, finger and handle. He should never climb ladders, ropes or scaffolds, but he can occasionally climb ramps and stairs.

(*Id.* at 14.)

### C. Past Relevant Work

The ALJ found at step four that Plaintiff could not perform his past relevant work as a police officer and state trooper. (*Id.* at 18.)

### D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). If the claimant has established at step four that he cannot do any work he has done in the past because of his severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with his RFC, age, education, and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980). The ALJ found here that given Plaintiff's age, education, work experience, and RFC, there were jobs in the national economy that he could perform, such as clerk, ticket taker, and toll bridge attendant. (Tr. 19.)

### V. ANALYSIS

In pertinent part, Plaintiff contends that the ALJ materially erred in assessing his credibility. (Docket Entries 9 at 13-12 and 12 at 5-10.) The Court agrees for the following reasons. More specifically, *Craig v. Chater* provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or

6

psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing 20 C.F.R. § 404.1529(b)).[6]

If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including the claimant's statements about pain, in order to determine whether the claimant is disabled. *Id.* at 595-96. While the ALJ must consider a claimant's statements and other subjective evidence at step two, he need not credit them insofar as they conflict with the objective medical evidence or to the extent that the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* Where the ALJ has considered the relevant factors[7] and heard the claimant's testimony and observed his demeanor, the ALJ's credibility determination is entitled to deference. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

---

[6] Subsequent to Plaintiff filing his complaint and his motion for judgment, the Social Security Administration superseded SSR 96-7p with SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). Social Security Ruling 16-3p eliminates the use of the term " 'credibility' from . . . sub-regulatory policy" and "clarify[ies] that subjective symptom evaluation is not an examination of an individual's character." *Id.* at *1. Because SSR 96-7p was in effect at the time of the ALJ's decision, this Court will review the decision under SSR 96-7p. *See Keefer v. Colvin*, 2016 WL 5539516, at *11 n.5 (D.S.C. Sept. 30, 2016).

[7] The relevant regulatory factors are: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of his pain or other symptoms; (vi) any measures the claimant uses or has used to relieve his pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). The regulations do not mandate that the ALJ discuss all these factors in a decision. *See, e.g., Baggett v. Astrue*, No. 5:08–CV–165–D, 2009 WL 1438209, at *9 (E.D.N.C. May 20, 2009) (unpublished) (noting that the law requires "that the ALJ consider these factors, not that [s]he discuss each of them").

Here, the ALJ stated that he had "careful[ly] consider[ed]" the evidence and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (Tr. at 15.) The ALJ therefore discharged his duty under the first step of the *Craig* analysis. Second, at step-two of the *Craig* analysis, the ALJ decided that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (*Id.*)

It is at this point that the ALJ erred. Specifically, Plaintiff contends—and the Court agrees—that the ALJ's decision to partially discount his credibility regarding the purported side-effects of his medication is unsupported by substantial evidence. (Docket Entry 9 at 14-16.) In support, Plaintiff points to his hearing testimony, which, reads as follows:

> Q: And what medication do you take for pain?
>
> A: Hydrocodone 10 – I had him cut it back – 10 milligram, 325 I think is what it said.
>
> Q: And do you have any side effects from the medication?
>
> A: Well, it makes you drowsy and sleepy. And like any narcotic drug or alcohol or anything, it affects judgment and reasoning.
>
> Q: How does it affect your judgment and reasoning?
>
> A: Well, if the pain's too bad, and I can take up to six a day, if I take about four, you can feel it.
>
> Q: How do you feel it?
>
> A: Kind of woozy. I mean, to be honest, I drank before. I know what alcohol do to you.

8

ALJ: So what are you saying, in comparison to drinking? I think that's what you were trying to tell me.

CLMT: Yes, it'll make you – Basically, it's like this. I've sent people to jail and prison for taking that stuff and driving. I wouldn't get out and drive and take it. There's just no way.

**Examination of Claimant by Claimant's Attorney**

Q: And how often do you have that experience in an average week? How many times would you have to take medication?

A: It depends on if I have the sharp pain. That's when I just absolutely have to take the medicine. And I've tried to take one or two. And then I may have to take another one. But I will not – It's like I told Dr. Took, I believe I'd just scream before I take eight a day. They really should have me eight a day. And it just tears up my stomach and all that.

ALJ: So how may do you take? Four, would you say?

CLMT: Sir, I can take six a day.

ALJ: How many do you take?

CLMT: Usually between four and six. It just depends on that sharp pain.

**Examination of Claimant by Claimant's Attorney**

Q: And so are you – How often, in an average week, how many days a week would you be woozy like you just described where you lose your—

A: I'm going to say probably four times. It's just, it really just depends.

ALJ: Depends on the pain?

CLMT: What I've done, yes, sir, the pain.

. . . .

9

### Examination of Claimant by Claimant's Attorney

Q: And when you take medication, what do you do? Are you still able to be up and about, or do you lay down, or what?

A: I try to lay down. Because that helps between taking the medication and laying down.

Q: And how long do you lay down when you take medication?

A: It just depends on if it knocks me out or not.

Q: Okay. So let's – How often does it knock you out, when you take medication?

A: I might sleep two hours.

Q: But in a week, how many times a week would you be knocked out by medication?

A: It varies, it may be three. It depends on the pain, and when it happens.

Q: But three days a week?

A: At least.

Q: Okay. And, that time, you lay down?

A: I maybe put my legs over the end of things, try to ease it off first, and if that don't, then I have to take the medication.

Q: And lay down?

A: Yes, sir.

Q: And how long do you lay down.

A: It depends. It may be an hour. If it knocks me out, I may be there an hour. Or two hours. It just depends.

10

Q: Okay. So –

A: I don't know if it – I don't know about – I don't know if its because if I hadn't eaten nothing, or I've eat something, or what. Medication just affects me differently different times, different ways.

Q: And does this happen the same time every day?

A: Most of the time, stiffness is after I get back from the Y. It may last, it may start about lunchtime or just before lunch, but by afternoon, I just, I'm just tight as a tick.

Q: All okay. And then when you take this medication, you said three or four days a week, it knocks you out. And then you have to lay down in the afternoon?

A: Yes, I'll lay down. It makes me drowsy.

Q: Right. And then how long to you lay down?

A: It may be an hour, two hours. It may be 45 minutes, it just depends. I think a lot of it depends on whether I've got anything on my stomach or not.

Q: Okay. Now, you're taking medication as your doctor prescribed?

A: Yes, sir.

Q: Within the range that he's prescribed?

A: Yes, where he's set up to six a day.

Q: Okay. How many times do you take up to six a day, in an average week?

A: I'm going to say at least three days. At least. Like I said, I may do better some days than I do others.

ATTY: Right.

11

> ALJ: I appreciate you all helping to try to be precise in your testimony, and I appreciate what you're trying to do, and I thank you for that. And maybe, probably what you did for a living.

(Tr. 38-40, 54-57.)

The ALJ addressed this testimony as follows:

> Early in the hearing, the claimant stated that his medication made him, drowsy/sleepy and "kinda woozy". He also suggested that his medication could affect this judgment and reasoning, but he was very vague in this regard, in that he did not provide any examples of instances when he experienced this allegation. The claimant initially stated that he has not had a full night's sleep (he clarified a full night's sleep as six hours) since his fall in January 2010, which he attributed to his medication. He then clarified that the medication that kept him awake was change[d] to the medication he currently takes that makes him sleepy. The claimant finally reported that he does, in fact, gets [sic] up to seven hours of sleep, at times, but no more than seven.

(Tr. 15.) Consequently, the ALJ determined that Plaintiff's testimony regarding the side effects of his medications was not entirely credible because it was "very vague." *Id.*

This finding is not supported by substantial evidence. Plaintiff's testimony that his pain medication required him to lay down/sleep between forty-five minutes to two hours, three to four times per week, because it "knocked" him "out" was not "vague." In fact, during the hearing, the ALJ indicated the opposite, complimenting Plaintiff and counsel for the detail of the testimony. (*Id.* at 56-57.) And, furthermore, while the ALJ correctly noted that Plaintiff failed to provide specific example of limitations to judgment and reasoning due to side effects from medication, *he failed to acknowledge or address the fact that Plaintiff testified in*

12

*considerable detail that his medication "knocked" him "out" repeatedly during the week.*[8] The ability to exercise judgment and reasoning is contingent upon being awake and the ALJ glossed over this particular and specific testimony without comment.

Moreover, that Plaintiff's medication might impact his ability to work is supported elsewhere in the record. Plaintiff's treating physician, for example, reported that the side-effects of Plaintiff's hydrocodone "may impair mentation."[9] (*Id.* at 437.) The Court is also reluctant to deem any error here as being merely harmless. The fact that the ALJ may have failed to meaningfully consider testimony on the side effects of Plaintiff's medication here is potentially material. The VE testified, for example, that if Plaintiff missed two days of work a month, or was off task 20% of the day, he would be unable to work. (*Id.* at 66-67.)

All this leaves the Court to speculate as to whether the ALJ simply failed to consider Plaintiff's testimony on this issue or, alternatively, decided to discount this testimony without

---

[8] *See, e.g., Beckley v. Apfel*, 152 F.3d 1056, 1060 (8th Cir. 1998) (remanding where "[t]he ALJ also failed to consider the dosage, effectiveness, and side effects of Beckley's medications, in spite of her testimony that the medications made her 'woozy' and 'silly.' "); *Rybakowski v. Colvin*, No. 13 C 6775, 2015 WL 5920743, at *11 (N.D. Ill. Oct. 8, 2015) (unpublished) (remanding where ALJ failed to consider as part of his decision testimony from the claimant that use of hydrocodone necessitated 1-2 hour naps daily because "[a]n ALJ may not ignore evidence that is contrary to his ultimate conclusion)"); *Brown v. Barnhart*, 298 F. Supp. 2d 773, 795 (E.D. Wis. 2004) (remanding for failure to discuss the side effects of plaintiff's medication, which she stated created "a 'drugged' state" causing her to "function in slow motion" and made her "drowsy"").

[9] Although the ALJ partially discounted Dr. Tooke's medical opinion, he did so only to the extent it was "inconsistent with the evidence of record and the adjudged assessment" in his decision. (Tr. 18.) However, as explained, the ALJ apparently did not consider all the evidence of record because he never (or may have never) considered Plaintiff's testimony that his medication repeatedly "knocked" him "out" during the week or forced him to lie down. Consequently, if the ALJ did intend to discount Dr. Tooke's opinion on mentation, that implicit finding is not presently susceptible to judicial review in light of the aforementioned omission.

a meaningful explanation. Consequently, the Court concludes that remand is proper so that the ALJ may build a logical bridge between the evidence of record and his conclusions. *See, e.g., Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) ("The ALJ cited evidence that he appeared to believe tended to discredit Monroe's testimony regarding his claimed episodes of loss of consciousness and fatigue. However, he failed to build an accurate and logical bridge from the evidence to his conclusion that Monroe's testimony was not credible. . . . On remand, if the ALJ decides to discredit Monroe's testimony regarding his episodes of loss of consciousness and fatigue, it will be incumbent on him to provide a clearer explanation of his reasons for doing so, such that it will allow meaningful review of his decision").

None of this necessarily means that Plaintiff is disabled under the Act and the undersigned expresses no opinion on that matter. Nevertheless, the undersigned concludes that the proper course here is to remand this matter for further administrative proceedings. The Court declines consideration of the additional issues raised by Plaintiff at this time.[10] *Hancock v. Barnhart*, 206 F.Supp.2d 757, 763-764 (W.D. Va. 2002) (on remand, the prior decision of no preclusive effect, as it is vacated and the new hearing is conducted).

---

[10] The ALJ may have also crossed the line and made medical judgments beyond his area of expertise. This is because the ALJ asserted, without pointing to medical evidence in support, that Plaintiff's "limitations and pain complaints are not *typical* for the impairments that are documented by medical findings in this case." (Tr. 15 (emphasis added).) *See, e.g., Willcockson v. Astrue*, 540 F.3d 878, 881 (8th Cir. 2008) ("We are unsure what particular symptoms are "usual" or "typical" for Ms. Willcockson's impairments, and what evidence the ALJ relied on to make these statements. These matters, of course, can be clarified by the ALJ on remand."). The Court notes further that nowhere in the ALJ's decision does he mention the medical opinions of the non-examining state agency physicians. While ALJs are not bound by their findings, they may not ignore these opinions and, unless a treating source's opinion is given controlling weight, must explain the weight given to these opinions. 20 C.F.R. § 404.1527(e). These issue may be considered and, if proper, addressed further on remand.

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the decision of the ALJ is not susceptible to judicial review. Accordingly, this Court **RECOMMENDS** that the Commissioner's decision finding no disability be **REVERSED**, and the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further administrative action as set out above. To this extent, Plaintiff's motion for judgment (Docket Entry 8) should be **GRANTED** and Defendant's motion for judgment on the pleadings (Docket Entry 10) be **DENIED**.

Joe L. Webster
United States Magistrate Judge

March 1, 2017